IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL L. DILLON,                          )
                                            )
        Plaintiff,                          )
                                            )
    -vs-                                    )        Civil Action No. 09-525
                                            )
MICHAEL J. ASTRUE,                          )
COMMISSIONER OF SOCIAL                      )
SECURITY                                    )
                                            )
        Defendant.                          )

AMBROSE, District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 11 and 13). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 12 and 14). After careful consideration of the submissions of the parties, and for the reasons discussed below, Plaintiff's Motion (Docket No. 11) is granted with direction to grant benefits consistent with the recognition that plaintiff was disabled on or before November 18, 2007. Defendant's motion (Docket No. 13) is denied.

### I. PROCEDURAL BACKGROUND

Plaintiff has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433 and Social Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

On January 1, 2008, plaintiff protectively filed the instant application for DIB and SSI alleging disability since November 1, 2007, due to posttraumatic stress disorder, depression,

and alcoholism. (R. 55-56, 109). Plaintiff's claims were denied at the initial level on April 4, 2008. (R. 64-68). Plaintiff requested a hearing. (R. 70-71). Administrative Law Judge Patricia C. Henry ("ALJ") held a hearing on October 7, 2008, at which time plaintiff, who was represented by counsel, and a vocational expert testified. (R. 23-55). On February 2, 2009, the ALJ denied plaintiff's claim for benefits finding that the plaintiff is not disabled under the Act. (R. 13-22). The Appeals Council denied plaintiff's request for review. (R. 1-3, 6). After thus exhausting her administrative remedies, plaintiff filed the instant action.

The parties have filed cross-motions for summary judgment. The plaintiff raises two main issues on appeal. First, he claims that the prior ruling was not supported by substantial evidence because the ALJ did not give proper weight to the letter/report of Dr. Sabato Stiles who opined that it was not possible for plaintiff to "perform even the briefest periods of work, due to poor concentration and slowed thinking as well as frequent intrusive thoughts, often of suicide. He has low motivation due directly to the severity of his state of constant depression and it takes great efforts to complete tasks." (R. 409). Second, he argues that the ALJ's determination that plaintiff's alcohol abuse or dependency was material to his disability was improper and not supported by substantial evidence.

## II. FACTUAL BACKGROUND

In the Fall of 2007, plaintiff was arrested for his fourth DUI and placed on house arrest and in substance abuse and mental health treatment. (R. 295). At the hearing, plaintiff testified that he took his last drink in November 2007. (R. 34). On November 18, 2007, plaintiff began a drug rehabilitation program and mental health treatment with Dr. Stile at Southwestern Pennsylvania Human Services Inc. (SPHS). (R. 409). On December 7, 2007, plaintiff underwent a physician assessment by Dr. Stile. Plaintiff reported that he had problems drinking and that although he had not reported it, had been fighting depression and panic attacks for the last

2

twenty years. (R. 188). He further reported that the depression had worsened and he was experiencing passive suicidal thoughts. In the past, while on alcohol, he stated that he had tried to kill himself once by shooting himself, once by injecting air into his veins, and once by hooking a hose up to a van. (R. 188). Upon mental status examination, Dr. Stile indicated that plaintiff was not impulsive; had a sad and restricted mood; normal speech; had goal-directed thought process; experienced chronic suicidal/homicidal ideation in the past few years; was alert and oriented; and had intact memory and judgment. Id. The report noted that as part of treatment, plaintiff was receiving random urinalysis testing for substance abuse. (R. 190). Plaintiff was diagnosed with recurrent Major Depressive Disorder, rule out panic disorder, and alcohol abuse and was placed on Effexor. (R. 188-189).

On January 3, 2008, plaintiff underwent another evaluation at SPHS where his symptoms were noted as severe. He reported that he experienced suicidal and homicidal ideation, which had been especially bad when he was using alcohol. (R. 229-230). On January 23, 2008, plaintiff was voluntarily psychiatrically hospitalized on the advice of Dr. Stile. (R. 194). Plaintiff reported agitation with suicidal and homicidal ideation, decreased sleep with nightmares about killing people and irritability. (R. 194). He indicated that his medications were not working. Id. Upon examination, the doctor indicated that plaintiff's mood was angry, depressed agitated, and sad; his affect was restricted; and his thought process was coherent. Plaintiff reported four to five suicide attempts with the last being four to five years prior; alcohol use ending in late September 2007; and being on house arrest since November 20, 2007. (R. 194-195). Plaintiff indicated being on Seroquel, lithium, and Effexor. (R. 196). The doctor noted a diagnosis of depressive disorder, NOS and alcohol dependency and abuse in early remission with a Global Assessment of Functioning (GAF) of 25-30. Id.

3

Plaintiff was discharged from psychiatric care on January 28, 2005, at his request, to restart his drug rehabilitation/mental health program. The discharge summary by the psychiatrist indicated that plaintiff had bipolar disorder type II, depressed type and alcohol dependence with a GAF of 45. (R. 201). Upon mental status examination, the psychiatrist noted that Plaintiff was pleasant and cooperative; had goal-directed thought processes; and good insight and judgment. (R. 200). On March 8, 2008, Plaintiff reported that his days consisted of going to group and that he attended AA three times a week. He reported that if he was not in treatment he would not go outside (R. 149-150).

On March 13, 2008, plaintiff underwent another physician assessment by Dr. Stile at SPHS. His mood was reported as still sad with suicidal and homicidal thoughts. Upon examination, Dr. Stiles noted that plaintiff had a sad/restricted mood, goal-directed thoughts, suicidal and homicidal thoughts, and fair and intact judgment. Plaintiff's diagnosis was noted as mood disorder NOS, rule out bipolar disorder, PTSD, and alcohol dependency with a GAF of 45. (R. 225).

On April 9, 2008, Dr. John Vigna, a state agency psychiatrist who reviewed plaintiff's records, completed a mental residual functional capacity evaluation indicating that plaintiff was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attention and be punctual within regular work tolerances; work in proximity to others without being distracted by them; ability to make work related decisions; complete a normal workday and workweek without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; accept criticism from supervisors; get along with co-workers and peers without distracting them or exhibiting extreme behaviors; maintain socially

4

appropriate behavior; adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (R. 240). He consequently concluded that plaintiff was capable of sustained work. (R. 242-254). He further opined that Plaintiff did not meet any listings for mental impairments, including those related to substance addiction disorders. (R. 250).

Plaintiff had a consultation for electroconvulsive therapy with Dr. Petronilla Valuz-Smith on April 24, 2008. (R. 294). Plaintiff reported that he last used alcohol in the fall of 2007 and was presently in treatment for major depression, anxiety, and alcohol and drug treatment. She noted that plaintiff was on prilosec, seroquel, depakote, remeron, albuterol for chronic bronchitis, and ibuprofen. (R. 295). Upon mental status examination, Dr. Valuz-Smith noted that Plaintiff had a depressed mood with congruent and stable affect; an absence of dangerousness; suicidal and assaultative ideas with no plan, gesture or intent at the time; and appropriate insight and judgment. (R. 296). She noted a diagnosis of major depressive disorder, recurrent, severe; PTSD, dysthymia, and alcohol dependency in sustained remission under a controlled environment with a GAF of 45. Dr. Valuz-Smith opined that with plaintiff's limited response to psychotropic medications, his major depressive disorder could interfere with plaintiff's ability to maintain sobriety. (R. 298). Valuz-Smith noted that plaintiff could possibly only have a fifty percent chance of a favorable outcome with ECT due his lack of response to psychotropic medications. She stated that he would have to be off of all of his medications before starting ECT. Id.

From May 21st to May 25th, 2008, Plaintiff was psychiatrically hospitalized at Westmoreland Hospital for complaints of increasing depression with suicidal ideation. The intake records indicated that plaintiff was on the maximum dosage of medication but was still

5

feeling depressed and was thinking about suicide. Notes indicate that he had been sober for several months. (R. 413). At his intake psychological evaluation, the psychologist noted that plaintiff's medications were not working and that plaintiff had a depressed mood with suicidal ideation, lack of interest in activities, and unable to contact for safety. The psychologist indicated plaintiff had anhedonia, psychomotor retardation, and problems with sleep. Upon mental status examination, the psychologist recorded that plaintiff had a depressed mood, dysphoric affect, suicidal ideation, and limited insight and judgment. (R. 415-416.) The psychologist assessed a GAF of 25. Id.

While in treatment, plaintiff's medications were adjusted. At his discharge mental status examination, plaintiff was alert and oriented and stated that his mood was better. The psychologist noted a restricted affect, no suicidal or homicidal ideation, and guarded impulse control. (R. 414). Plaintiff was strongly encouraged to abstain from alcohol abuse. Urinalysis from his hospital stay was negative for drugs and alcohol. (R. 414).

Plaintiff was hospitalized for a third time on May 30th through June 10, 2008 at Western Psychiatric. Plaintiff reported suicidal ideation and plan. He further reported a sad mood, deep hurt inside, hopelessness, decreased concentration, feeling apathetic, feeling anergic, feeling suicidal, and that his last drink had been the previous fall. (R. 258). At his full psychiatric evaluation, the psychologist recorded psychomotor retardation, sleep disturbance, eating disturbance, sadness, dysphoria, and suicidal indicators. Upon examination, the psychologist noted that plaintiff was depressed with dysphoric, congruent and constricted affect; had suicidal ideation; interruptible and redirectable attention and concentration; and poor insight and judgment. (R. 307). During treatment, plaintiff's medications were again readjusted. Upon discharge, the psychologist noted that plaintiff had suicidal thoughts with occasional thoughts of

6

harming others. The psychologist noted that plaintiff had been sober for six months and had a
good response to changes in his medication including being more positive, hopeful, and
energetic. His mental status at discharge was alert and cooperative with a good mood,
congruent affect, no suicidal or homicidal ideations, baseline cognitive functions, and good
insight and judgment. The psychologist noted that plaintiff was diagnosed with major depressive
disorder, recurrent severe without psychosis; PTSD, and alcohol dependence in early full
remission with a GAF of 55. (R. 55).

On June 11, 2008, Plaintiff reported to SPHS that his last drink had been on November
17, 2007. (R. 289). On June 16, 2008, SPHS reported that plaintiff was doing better after his
hospital stay with a GAF of 55. (R. 288). On July 11, 2008, SPHS reported that plaintiff was still
depressed with "ok" impulse control. (R. 282). On July 18, 2008, SPHS noted that plaintiff had
low energy, adequate impulse control, slow speech, reported depression, and was obsessing
over events. (R. 281).

Plaintiff underwent a second evaluation for ECT with Dr. Robert Howland, the psychiatric
director at SPHS on July 23, 2008. Dr. Howland noted that plaintiff's last drink was eight months
before, but that he was feeling persistently depressed. (R. 277). Plaintiff denied recent thoughts
of suicide or violence and reported that his interest, energy, and motivation were poor. He was
wearing an ankle bracelet at the evaluation due to continuing house arrest. Upon examination,
Dr. Howland noted that plaintiff was alert and oriented with a depressed mood and restricted
affect. He further reported that plaintiff had no suicidal or homicidal ideation and good insight
and judgment. Dr. Howland reported a diagnosis of bipolar disorder type I, depressed severe
and alcohol dependence in early remission with a GAF of 40. ECT was discussed as a possible
treatment. (R. 277-279).

7

On August 8, 2008, plaintiff had a medical check where he reported being discouraged by the lack of success and effect of the medications he was taking including Zoloft, Abilify, Depakote, Seroquel, and Vistaril. Plaintiff reported that he was still depressed and had suicidal and homicidal ideations but would not act on them. (R. 274). He was switched to Prozac.Id. On August 28, 2008, plaintiff had a treatment update with SPHS where he reported that he was "still miserable" and "didn't want to die." (R. 273).  He was on Prozac, Depakote, Seroquel, and Vistaril. Major depressive disorder and alcohol dependence were noted with a GAF of 55.Id.

At the hearing on October 7, 2008, Plaintiff testified that he had problems with drugs and alcohol but had stopped drinking. He reported past suicide attempts during the time before he had stopped drinking in November 2007. (R. 33-34). He testified that he had been in Western Psych because he did not care about his life or anybody else's; had been in AA for the past eleven months; was on house arrest for a DUI from the previous fall; and was in partial hospitalization through Westmoreland Hospital. (R. 35-38). He stated that he usually stays in the house inside his bedroom with the doors closed and windows shut for three to four days at a time. (R. 40). He stated that he did not like to be around people and that his medications were not helping him. (R. 39-41). He indicated that he was worried about taking orders from people because he might harm them and that he saw his brother one to three times a week, his mother occasionally, had a cat, and one friend who handled his shopping and money. (R. 44-48).

On October 10, 2008, Dr. Stile wrote a letter to plaintiff's attorney indicating that plaintiff was still in treatment for depression with frequent suicidal ideation and had been a patient since November 18, 2007. (R. 409). Dr. Stiles noted that plaintiff was suffering from Major Depressive

Disorder, severe, recurrent[1] and PTSD, delayed type. He indicated that plaintiff's sleep was
poor even with medication, appetite was impaired, energy was low, ADLs were all reduced or
absent, and that medication had only a small amount of benefit.Id. He stated that plaintiff had
been evaluated for Electro-convulsant therapy[2], but was "understandab[ly] cautious about that
process." In conclusion, Dr. Stile opined, "Mr. Dillon is severely impaired by his psychiatric
illnesses and it is currently not possible for him to perform even the briefest periods of work, due
to poor concentration and slowed thinking as well as frequent intrusive thoughts, often of
suicide. He has low motivation due directly to the severity of his state of constant depression
and its takes great effort to complete tasks."Id.

On February 2, 2009, the ALJ rendered her opinion on plaintiff's disability. She found as
follows:

> 1.    The claimant meets the insured status requirements of the
>       Social Security Act through December 31, 2010.

---

[1] Major depressive disorder is a condition marked by the occurrence of one or more
major depressive episodes in the absence of manic or hypomanic episodes. Recurrent is
defined by two or more depressive episodes separated by at least two months of a complete
resolution of symptoms or the presence of symptoms that no longer meet the full criteria for a
major depressive episode. Major depressive disorder that is labeled as severe without psychotic
features indicates several symptoms in excess of those required to make a diagnosis, and
symptoms markedly interfere with occupational functioning or with usual social activities or
relationships with others. Major depressive episodes are marked by a period of at least two
consecutive weeks during which there is either depressed mood or the loss of interest or
pleasure in nearly all activities. See American Psychiatric Association: Diagnostic and Statistical
Manual of Mental Disorders (DSM-IV-TR) 349, 369, 413(4th ed. 2000); 4 J.E. Schmidt,
Attorney's Dictionary of Medicine Illustrated, M-18 (2008).

[2] "The most common use of ECT is in patients who have not responded to other
treatments. During the course of pharmacotherapy, lack of clinical response, intolerance of side
effects, deterioration in the psychiatric condition, the appearance of suicidality or inanition are
reasons to consider the use of ETC."  APA Task Force Report on Electroconvulsive Therapy,
http://www.ect.org/apa-task-force-report-on-electroconvulsive-therapy/ (last visited July 16,
2009).

2.    The claimant has not engaged in substantial gainful activity since November 1, 2005 (20 CFR 404.1520(b), 404.1571 et. seq., 416.920(b) and 416.971 et. seq.).

3.    The claimant has the following severe impairments: major depressive disorder, anxiety disorder, Rule Out Panic Disorder, post-traumatic stress disorder (PTSD), alcohol abuse and dependency. As of October 11, 2008 the claimant's alcohol abuse and dependency in early remission while under controlled circumstances (20 CFR 404.1520(c) and 416.920(c)).

4.    From November 1, 2005 through June 10, 2008, the claimant's impairments met the listing under section 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5.    From November 1, 2005 through June 10, 2008, the claimant was disabled within the meaning of the Social Security Act.

6.    The claimant's alcohol abuse and dependence from November 1, 2005 through June 10, 2008, was a contributing factor material to the claimant's disability.

7.    In the absence of alcohol abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

8.    In the absence of alcohol use, the claimant has the residual functional capacity to perform simple, routine, and repetitive tasks, not performed in a fast-paced production environment. The work should involve only simple work-related decisions and, in general, relatively few work place changes. The claimant can occasionally interact with supervisors, co-workers, and the general public.

9.    If the claimant stopped the substance use, the claimant would be unable to perform past relevant work. (20 CFR 404.1565 and 416.965).

10.    Born July 4, 1969, the claimant was 38 years old as of June 11, 2008. By regulation, he is classified as a

10

"younger person" (age 18-44) (20CFR 404.1563 and 416.963).

11.    The claimant has a high school education (20 CFR 404.1564 and 416.964).

12.    Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

13.    Considering the claimant's age, education, work experience, and residual functional capacity as of June 11, 2008, there are a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

14.    The claimant was not disabled within the meaning of the Social Security Act, at any time from November 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 16-22).

## III. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as conclusive. 42 U.S.C. 405 (g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). In making this determination, the district court considers and reviews only those findings

11

upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by

supplying additional facts from its own independent analysis of portions of the record which

were not mentioned or discussed by the ALJ. Fargnoli v. Massarini, 247 F.3d 34, 44 n.7 (3d Cir.

2001).

      To demonstrate disability and eligibility for social security benefits under the Act, the

plaintiff must demonstrate an inability to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423 (d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir.

1986). When resolving the issue of whether a claimant is disabled and whether a claimant is

entitled to DBI benefits, the ALJ applies a five step analysis. 20 C.F.R. § 404.1520 (a).

      The ALJ must determine: (1) whether the claimant is currently engaging in substantial

gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a

severe impairment whether it meets or equals the criteria listed in 20 C.F.R. pt. 404. subpt. P,

app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the

claimant's impairments prevent him from performing his past relevant work; and (5) if the

claimant is incapable of performing his past relevant work, whether he can perform any other

work which exists in the national economy, in light of his age, education, work experience and

residual functional capacity. 20 C.F.R. § 404.1520. In all but the final step, the burden of proof is

on the claimant. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1),

423(d)(1)(A).

12

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

## B. The Weight Given to Dr. Stiles and Findings Related to Alcohol Dependency

Plaintiff's arguments relating to the weight given to Dr. Stiles and the determination regarding his alcohol dependency are intertwined. Dr. Stiles made no opinion on plaintiff's alcohol abuse affecting his impairments instead stating that his severe impairments were related to his "psychiatric illnesses", yet the ALJ found that the claimant's alcohol abuse and dependence from November 1, 2005 through June 10, 2008, was a contributing factor material to the claimant's disability. (R. 29).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 422, 429 (3d. Cir. 1999), quoting, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). However, for controlling weight to be given to the opinion of a treating physician that opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence." 20 C.F.R. §§404.1527 (d)(2), 416.972 (d)(2). There are several factors that the ALJ may consider when determining what weight to give the opinion of the treating physician. 20 C.F.R. §404.1527, 416.927 (d)(2). They include the examining relationship, treating relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §404.1527 (d), 416.927 (d).

In her opinion, the ALJ noted that in the absence of alcohol use, she was giving the greatest weight to the opinion of Dr. John Vigna, who reviewed plaintiff's records on April 9,

13

2008 but did not examine plaintiff. Dr. Vigna opined that plaintiff was capable of sustained work. In support of the weight given to this opinion, the ALJ relied on conflicting notations on plaintiff's "substance abuse" diagnosis and reports on the last date he consumed. (R. 17-20). She determined that he ceased to meet the listing for a substance abuse disorder on June 10, 2008 and that his alcohol abuse and dependence was a contributing factor material to the claimant's disability from November 1, 2005 to June 10, 2008. Id.

A plaintiff's drug addiction is not material to the determination of a disability if the claimant would be disabled in the absence of the addiction. 20 C.F.R. §404.1535. The key inquiry in the determination of whether substance abuse is a "contributing factor material to the determination of disability" is whether the plaintiff "would still [be]...disabled if [she] stopped using...[drugs]." In an emergency teletype from July 2, 1996, the SSA presented guidelines to adjudicators on how to address issues relating to findings of drug and alcohol abuse. SSA, Questions and Answers Concerning DAA from the 07/02/06 Teleconference, No. EM-96200, at 29 (August 30, 1996), available at https://secure.ssa.gov/apps10/. EM-96200 advises that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol use] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." Id.

The SSA has determined that the most important evidence to be considered in this materiality determination is "that relating to a period when the individual was not using drugs/alcohol." EM-96200 at 29. The ALJ should address the length of the period of abstinence, the time frame of the period of abstinence, or whether there was any increase or decrease in symptoms during that period – all factors considered relevant by the SSA. EM-96200 at 29. Where there is evidence in the record that indicates a period of abstinence, that evidence *must*

14

be considered in making the materiality determination. Fahy v. Astrue, 2008 WL 2550594, at *5 (E.D.Pa. June 26, 2008); Crawford v. Astrue, 2009 WL1033611, at *5 (E.D.Pa. April 15, 2009); Salazar v. Barnhart, 468 F.3d 615, 624 (10th Cir. 2006).

First, the ALJ's factual finding related to plaintiff's period of abstinence must be addressed. The ALJ essentially indicated that she did not find plaintiff's testimony that he had been abstinent since November 2007 to be credible. Although the ALJ cites to isolated places in the record from hospital stays and visits to the psychiatrist where records noted continued alcohol dependency or abuse in the section stating the "diagnosis", the ALJ ignored records indicating that plaintiff was receiving random drug and alcohol testing as a part of his court mandated alcohol abuse treatment. (R. 190, 414). There is no evidence in the record that plaintiff ever tested positive for alcohol use from his start of treatment on November 18, 2007 to the date of the decision. It is noted that plaintiff was also wearing a court mandated ankle bracelet due to his house arrest which would also have curbed his ability to obtain alcohol. (R. 277-279).

The records relied upon by the ALJ also noted that plaintiff had been abstinent starting in the Fall of 2007, despite the fact that alcohol dependency was still noted as a diagnosis on one or two occasions after that time. (R. 55, 194-195, 196, 201, 225, 414) The ALJ failed to give due weight to a significant number of records, especially by plaintiff's treating physicians at SPHS, reporting that plaintiff's alcohol dependency was in remission and that he had been sober since Fall 2007. (R. 196, 298, 277-279). She also chose to discount Dr Stiles' opinion that plaintiff's severe restrictions starting from November 18, 2007 to the time of the letter were caused by "psychiatric illnesses" including Major Depressive Disorder, severe, recurrent and PTSD, delayed type. (R. 409). Considering that no other physician opined that plaintiff's mental

15

impairments were related to his prior alcohol abuse, this opinion letter should have been given great weight and the ALJ's finding was in error. As a result, the factual findings related to plaintiff's alcohol abuse and dependency were not supported by substantial evidence and cannot be treated as conclusive.

Since substantial evidence of record only supports the conclusion that plaintiff was abstinent from alcohol from November 2007 when he entered mandatory drug and alcohol treatment and mental health treatment, the ALJ should have considered the period following this time as a period of abstinence pursuant to EM96-200. Plaintiff's symptoms undeniably continued and worsened after he ceased using alcohol. The ALJ discounted much of plaintiff's psychiatric treatment because she failed to give due credit to this extended period of abstinence and continuing serious symptoms. There is no medical evidence to support her conclusions. Plaintiff's treating psychologists consistently noted severe symptoms with a sad and restricted mood and chronic suicidal and homicidal thoughts. (R. 190, 194, 225, 229-230, 295-296). Plaintiff was psychiatrically hospitalized on three occasions for about a week at a time because his medications were not relieving his symptoms and he would experience increasing suicidal and homicidal thoughts. (R. 194-195, 258, 307, 413-416). His GAF upon admission was noted as being in the 25-30 range indicative of behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . ." American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4ᵗʰ ed. 2000).

Plaintiff's psychologists consistently reported that his medications were not relieving his symptoms and that he was not experiencing more than a small amount of benefit from taking

16

them. He was evaluated for ECT on two occasions as a further indication that his treatments were not helping his symptoms. Finally, there is the opinion letter of Dr. Stiles indicating that plaintiff's activities of daily living were all reduced or absent, his sleep was poor, he was experiencing side effects from the medication, he had poor concentration with slowed thoughts as well as intrusive thoughts including suicide, and was experiencing low motivation due directly to the severity of his constant depression. (R. 409).

The Act describes disability as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. The ability to engage in substantial gainful employment means more than the ability to do certain of the physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week. Dobrowolsky v. Califano, 606 F.2d 403, 408 (3d Cir. 1979). The question thus is not whether a claimant can perform activities consistent with substantial gainful activity on any particular day, but whether the claimant has the ability to engage in work activities on a systematic and sustained basis. Plaintiff had the burden of making out a prima facia case that he was disabled within in the meaning of the Act. Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980); Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980); 20 C.F.R. § 404.1512(a). This burden generally is met where the record clearly substantiates a claimant's subjective claim that he or she has an impairment which prevents the claimant from engaging in substantial gainful activity. Rossi v. Califano, 602 F.2d 55 (3d Cir. 1979). Here, the substantial evidence of record supports only the conclusion that plaintiff could not engage in such activity at least as of November 18, 2007, when Dr. Stiles indicated that plaintiff began treatment for his various severe mental imparments. Accordingly, to the extent

17

the ALJ's findings and conclusions reflected a determination that Plaintiff was not disabled at or after that point in time they were not supported by substantial evidence. As a result, Plaintiff's motion for summary judgment must be granted and the matter will be remanded to the Commissioner with direction to grant benefits consistent with the recognition that Plaintiff was disabled on or before November 18, 2007.

## III. CONCLUSION

In conclusion, based of the evidence of the record and the briefs filed in support thereof, I find that the ALJ failed to properly analyze the evidence and that substantial evidence did not exist to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act because of his alcohol dependency. As a result, the case will be reversed and remanded.

*********************************

18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL L. DILLON,                                    )
                                                      )
        Plaintiff,                                    )
                                                      )
    -vs-                                              )   Civil Action No. 09-525
                                                      )
MICHAEL J. ASTRUE,                                    )
COMMISSIONER OF SOCIAL                                )
SECURITY                                              )
                                                      )
        Defendant.                                    )

AMBROSE, District Judge.

ORDER OF COURT

AND NOW, this 16th day of November, 2009, it is Ordered that Defendant's Motion for

Summary Judgment (Docket No. 13) is DENIED. Plaintiff's Motion for Summary Judgment

(Docket No. 11) is GRANTED and this case is reversed and remanded to the Commissioner

with direction to grant benefits with recognition that plaintiff was disabled on or before

November 18, 2007. Judgment is entered in favor of plaintiff  and against defendant. This case

is closed forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge

19